IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

-oOo-

THE UNITED STATES OF AMERICA,)
                              )
        Plaintiff,            )   Case No. 3:13-CR-00433-10-JAG
                              )
-vs-                          )
                              )
CARLOS RIVERA-VELAZQUEZ,      )
                              )
        Defendant.            )
_____)


TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JAY A. GARCIA-GREGORY
CLEMENTE RUIZ-NAZARIO U.S. COURTHOUSE, HATO REY, PUERTO RICO
TUESDAY, MARCH 29, 2016
_____


A P P E A R A N C E S

For the United States of America:

        Assistant U.S. Attorney Alberto R. Lopez-Rocafort

For the Defendant:

        Attorney Frank D. Inserni-Milam

1    (Proceedings commenced at 4:57 pm.)

2                          -oOo-

3        THE CLERK:  United States of America versus Carlos

4    Rivera-Velazquez, Case Number 13-433, sentencing hearing.  For

5    the Government, Assistant U.S. Attorney Alberto Lopez, and for

6    defendant, Attorney Frank Inserni.  The defendant will be

7    assisted by the certified court interpreter.

8        MR. LOPEZ-ROCAFORT:  Good afternoon, Your Honor.  The

9    United States is ready.

10        MR. INSERNI-MILAM:  Good afternoon, Your Honor.

11    Frank Inserni, for the record, by appointment of the Court.

12    We're ready to proceed for a sentence.

13        THE COURT:  Okay.  If defendant feels pain in his

14    back, you know, he can sit down.  Okay?

15        THE DEFENDANT:  No.

16        THE COURT:  Okay.  Have you explained to the

17    defendant the presentence investigation report; you're

18    satisfied he understands all of the contents?

19        MR. INSERNI-MILAM:  Your Honor, I met with Mr.

20    Rivera-Velazquez yesterday.  We went over the amended PSR

21    report.  There is two reports:  There's the original one and

22    the amended one.

23        And we went over both.  We went over my corrections

24    and/or comments to both.  And I understand he understands it.

25    And, as a matter of fact, I filed a supplement last night, Your

1  Honor.

2          THE COURT:  Oh, you did.

3          MR. INSERNI-MILAM:  A supplementary to my --

4          THE COURT:  I have your presentence memo of Sunday,

5  the 27th.

6          MR. INSERNI-MILAM:  Last night, I filed a

7  supplementary --

8          THE COURT:  So you filed one last night, March 28th.

9          MR. INSERNI-MILAM:  Very brief.  Yes, sir.  Very

10  brief.

11          THE COURT:  Very brief.

12          Well, can I have that, please?

13          THE CLERK:  Yes, Your Honor.

14          THE COURT:  So I can examine it briefly.

15          MR. INSERNI-MILAM:  I apologize for not having

16  emailed it directly to the probation officer, which I usually

17  do.  I just thought, by having it filed in the CMF, all of the

18  parties would have it.  I don't want to delay the Court's

19  business or work here but --

20          THE COURT:  No.  That's fine.  Remember that I have a

21  standing order saying that, you know, sentencing memos have

22  been filed 10 days before the sentencing hearing.

23          MR. INSERNI-MILAM:  So, Your Honor, in light of that

24  --

25          THE COURT:  Precisely so I can imbibe everything in

1    there, and I can make a just decision.

2         MR. INSERNI-MILAM:  Your Honor, I've been going to

3    MDC to make sure that Mr. Rivera was aware of it.  Every time I

4    went, there was something new, so I would hopefully bring it to

5    the Court's attention, and to the parties.

6         THE COURT:  Oh, thank God.

7         Okay.  Okay.  While we are here, you know, it says

8    here that he has this problem, you know, with a herniated disc.

9    I mean, if you want me to make a designation to a hospital

10   facility or --

11        MR. INSERNI-MILAM:  No.  I already spoke with him.

12   He explained to me that he was given the option to go to

13   surgery, but it was not urgent.  He'd rather not go through

14   surgery.  He would rather wait to see if it improves.

15        THE COURT:  They have an excellent facility in

16   Minnesota, you know, where they have the Mayo Clinic, you know,

17   and the Rochester people, tending to the inmates.

18        MR. INSERNI-MILAM:  Your Honor, I would appreciate

19   you recommending any medical, for a follow-up medical

20   examination of his condition, but he --

21        THE COURT:  I will do that.

22        MR. INSERNI-MILAM:  Please.

23        THE COURT:  Okay.  But then, what would the

24   designation be?  You know, like Florida or --

25        MR. INSERNI-MILAM:  He was asking if --

```
 1              THE COURT:  I think he has someone in the states, no?
 2              MR. INSERNI-MILAM:  Pensacola, Louisiana and
 3   Mississippi.
 4              THE COURT:  In that order?
 5              MR. INSERNI-MILAM:  In that order, right.
 6              THE COURT:  Pensacola --
 7              MR. INSERNI-MILAM:  Louisiana and Mississippi.
 8              THE COURT:  The last one would be Mississippi.  And
 9   then, he has problems with alcohol, so I will also recommend
10   something with respect to that, and any other educational or
11   vocational training, you know, that will keep him busy.
12              Okay.  How -- I'm not going to take into account
13   what's going on in the local courts.  Okay?
14              MR. INSERNI-MILAM:  Fine.
15              THE COURT:  When the time comes, you know, either you
16   or someone else will have to deal with that.
17              MR. INSERNI-MILAM:  Right.  Right.  Perfect.
18              THE COURT:  Okay.  Now, the government, you stand by
19   the plea?
20              MR. LOPEZ-ROCAFORT:  Yes, Your Honor.  We stand by
21   the plea.
22              I just wanted to express to the Court that in, in, in
23   this case, Your Honor, the parties has been negotiating for a
24   while.  We took into consideration, as part of the negotiation,
25   as part of the plea, we took into consideration the conspiracy
```

1    charge, the defendant's characteristics as contained in the PSR

2    and, most important, obviously, defendant's role in the

3    offense.

4            And considering defendant's role in the offense, as a

5    supplier for marijuana, we, we agreed to a plea as, in which

6    both parties are requesting the Court to sentence the defendant

7    to 84 months of imprisonment, Your Honor.  And we, obviously we

8    stand by it, and we recommend to the Court that, to sentence

9    the defendant to 84 months of imprisonment.

10           THE COURT:  Okay.  That was what, you know, the

11   sentence recommendation.

12           MR. LOPEZ-ROCAFORT:  That is correct, as to both

13   parties, Your Honor.

14           MR. INSERNI-MILAM:  That's correct, Your Honor.

15           THE COURT:  Very well.

16           Okay.  And anything else before I hear defendant out?

17           MR. INSERNI-MILAM:  I think Mr. Lopez hit on what I

18   wanted to clarify, which is at footnote one of the amended PSI.

19   The footnote one, basically, is something that the probation

20   officer very clearly added after I filed my memo.

21           But, as Mr. Lopez said, the role of my client in this

22   case was as a marijuana supplier.  He was not -- and, Your

23   Honor, I made the distinction, and Mr. Lopez can correct me if

24   I'm wrong, but the U.S. Attorney's Office, they have a rule or

25   a custom or a form of calculating a, plea agreements, when

 1   drugs are involved, based on a certain drug, which is

 2   cocaine.  But that does not necessarily mean that the defendant

 3   was dealing in cocaine.

 4          And that's what I wanted to make the Court aware of.

 5   He is charged, and the evidence is, that he supplied marijuana.

 6   Okay?  Not cocaine.  But Mr. Lopez can correct me, the

 7   calculations of the guidelines are based on cocaine, and I just

 8   want to clarify that.

 9          So I want Your Honor to know that my client did not

10   deal with cocaine.  He's not a drug-user.  He's always

11   negative.  But he has an alcohol problem, and that's why I

12   asked the Court to recommend treatment for both, just for his

13   benefit, for both, for drugs and alcohol.

14          MR. LOPEZ-ROCAFORT:  Counsel is right in terms that

15   the defendant, the evidence of the government against the

16   defendant, and what the defendant accepted in the plea, in

17   terms of his role, was that he was a marijuana supplier for the

18   organization.  That doesn't mean that the defendant, due to

19   foreseeability, is responsible for other drugs that are sold at

20   the drug point, because you have a drug point that sells --

21          MR. INSERNI-MILAM:  Everything.

22          MR. LOPEZ-ROCAFORT:  -- everything:  cocaine

23   marijuana, heroin, crack cocaine.

24          So, in that sense, in these cases, Your Honor, we

25   obviously get to stipulations, get to stipulations with the

1    defendant as to a specific drug, in this case, cocaine, because

2    we understand that he's still responsible for, for the other

3    drugs that are sold there.  However, in terms of his role, in

4    terms what the evidence is as to him is that he was a supplier

5    for marijuana, and that is clarified in the statement of facts.

6            THE COURT:  It should be -- yeah.  It should be

7    clear, you know, from the presentence investigation report.

8    Okay?  Very well.

9            MR. INSERNI-MILAM:  Thank you.

10           That's, basically, my concern, Your Honor, with the

11   PSI.

12           THE COURT:  Okay.

13           MR. INSERNI-MILAM:  The recommendations --

14           MR. LOPEZ-ROCAFORT:  Just to be clear, the

15   acceptance, the stipulation was as to cocaine, and the numbers

16   that we reached in the plea agreement is within a stipulation

17   as to cocaine.  However, we obviously, we agree that the

18   evidence is that he was a supplier of marijuana.

19           THE COURT:  Okay.  Well, it was still a sufficient

20   quantity, you know, in order for him to be charged with

21   possession with intent to distribute.

22           MR. LOPEZ-ROCAFORT:  That is correct, Your Honor.

23           THE COURT:  You know, and both are controlled

24   substances.

25           MR. INSERNI-MILAM:  Right.

1           MR. LOPEZ-ROCAFORT:  That is correct.

2           THE COURT:  Very well.

3           Okay.  So would defendant like to address the Court

4   before I proceed to sentence?

5           THE DEFENDANT:  Yes.

6           THE COURT:  It's your right to do so.  Okay?

7           THE DEFENDANT:  In the plea that I signed, I got two

8   points for weapons.  In the accusations of the indictment, I

9   don't appear to having been charged with weapons.

10          In the discovery, there is no audio, video or photos

11  alluding to weapons.  In the statement of the witness, on page

12  13 of the indictment, there is no mention either of a weapon.

13          And which, on November 30th, when I pled guilty, the

14  magistrate suspended the hearing for half an hour.  She

15  suspended the hearing because she found no reason for those two

16  points for the weapon.

17          That is all.

18          THE COURT:  Okay.

19          MR. LOPEZ-ROCAFORT:  Your Honor, we want to clarify

20  that.

21          THE COURT:  Would you clarify that, please?

22          MR. LOPEZ-ROCAFORT:  Yes, Your Honor.

23          This is -- I don't know -- the defendant is right,

24  he's not charged with the firearm count.  That doesn't mean

25  that the government doesn't have evidence as to the defendant

```
1    with firearms.
2              We have testimonial evidence of the defendant
3    carrying firearms.  And, besides that, we have an arrest, at
4    the state level, by the Police of Puerto Rico, actually, in
5    that case.  That case appeared in the presentence report, where
6    the defendant was arrested with 200 baggies of marijuana and a
7    Glock 26.
8              That's why, during the negotiation process, we agreed
9    with counsel to add the two points, because obviously there was
10   going to be evidence of firearms as to this defendant, and the
11   two-points enhancement was going to be made by probation, Your
12   Honor.  That case, actually, the defendant still have an arrest
13   warrant pending.
14             THE COURT:  I see here.  Yes.
15             MR. LOPEZ-ROCAFORT:  So it is not correct that --
16             THE COURT:  It was administratively closed.
17             MR. LOPEZ-ROCAFORT:  Yes.  It can be open at any
18   time, Your Honor, because the defendant actually still a
19   fugitive in that case.
20             MR. INSERNI-MILAM:  Your Honor, I differ as to being
21   a fugitive.  The state authorities, the district attorney for
22   Caguas, they know that he's -- they've known all along, since
23   July, that he's been sitting in MDC Guaynabo.
24             And, as I said in my supplement, there has been no
25   habeas corpus proceedings.  There has been no requests.  It's
```

1   been closed administratively, which is correct, which is what

2   Mr. Lopez told you.

3           But that doesn't mean that he's a fugitive.  Being a

4   fugitive means he's absconding.

5           MR. LOPEZ-ROCAFORT:  He's declared a fugitive, Your

6   Honor.

7           MR. INSERNI-MILAM:  Well, yeah.  But then, it's been

8   -- what is it?  The (speaking in a non-English language), it's

9   a complaint, has been administratively --

10          THE COURT:  But it says here that there is an order

11  for his arrest because, for nonappearance, with a $200,000

12  bond.

13          MR. INSERNI-MILAM:  Your Honor, right.  But that is

14  the state case, as Your Honor said, is administratively

15  dismissed -- not dismissed, (speaking in a non-English

16  language).

17          THE COURT:  Yeah.  It has been put on hold.  Let's

18  put it that way.

19          MR. INSERNI-MILAM:  Put on hold.  Exactly.  Exactly.

20          THE COURT:  Pending whatever may happen, and it may

21  never revive, depending on what the Government of Puerto Rico

22  would like to do with defendant.  Okay?

23          MR. INSERNI-MILAM:  Exactly, Your Honor.

24          But my point is, which is my point with acquitted

25  conduct, and I will make this point to the Supreme Court, if I

1    had to, basically, what it says in a complaint by police

2    officer is not evidence.  That's my point.

3              In other words, I don't think Your Honor should give

4    much weight to a police complaint that is administratively

5    pending in order to declare this gentleman dangerous or declare

6    him as guilty of a firearm.  I don't think Your Honor -- I'm

7    not saying you're going to do that.

8              THE COURT:  You're not saying he's guilty.  I mean,

9    it was taken into account with respect to the plea agreement,

10   but that doesn't mean that he's being charged or he's being

11   found guilty of a firearm.

12             As a matter of fact, you know, when I recommend that

13   he be given some assistance, you know, for his alcohol problem

14   or, you know, even though he has tested negative for substance

15   abuse, if it had been a firearm, you know, perhaps he would not

16   be given that counseling.  Okay?

17             MR. INSERNI-MILAM:  Right.

18             THE COURT:  But I'm not going to do that, you know.

19   He's not being charged with the firearm, and the government has

20   made that very clear.

21             MR. LOPEZ-ROCAFORT:  My point is, my point is, that

22   that is the basis, not solely the case.  The case is

23   corroboration of the testimony of the witnesses, but that is

24   the basis for the two-point enhancement, of the firearm

25   enhancement.

```
1            Enhancement that defendant is saying that he's not
2     responsible now, nonetheless, it was initialed by him during
3     the change of plea hearing when we added the line of the
4     possession of firearms.  So I just want to clarify the record
5     that the defendant admitted as to that, and it's part of the
6     evidence.
7            It was not admission made in a vacuum.  It was
8     negotiated with counsel.
9            MR. INSERNI-MILAM:  That's true.
10           THE COURT:  This is not a conviction for firearms.
11           MR. INSERNI-MILAM:  Exactly.
12           MR. LOPEZ-ROCAFORT:  No.  Of course not.
13           THE COURT:  And the Court not once said, to make it
14    very clear on the record, this is not a conviction.
15           MR. LOPEZ-ROCAFORT:  It is not a conviction, Your
16    Honor.
17           THE COURT:  It will not be counted as a conviction
18    for firearms in any future proceeding.
19           MR. LOPEZ-ROCAFORT:  And, again, he's not charged
20    with a firearm count here.
21           THE COURT:  So I already made that finding on the
22    record.  Okay?
23           THE DEFENDANT:  I did not admit it.  I felt the
24    coercion, since they didn't give me anymore options.
25           THE COURT:  That's your view of the matter.
```

1              MR. INSERNI-MILAM:  Your Honor, I just wanted to --

2     basically, my point, I should have simplified it, is that,

3     which I think Your Honor understood, the fact that in 2010

4     there was a police officer who swore a complaint, it's 2010,

5     and we are -- today is what?  March 29, 2016.

6              And he has not been, ever since he was arrested in

7     July of last year by the federal authorities in Aguadilla, he

8     has not been searched or looked upon or arrested or

9     habeas-corpus arrested by the district attorney of Caguas,

10    means something.

11             THE COURT:  I think that has been made quite clear

12    already, so the record is clear on that.

13             MR. INSERNI-MILAM:  Perfect.  Thank you.

14             THE COURT:  And this is not a conviction for

15    firearms.

16             MR. INSERNI-MILAM:  Perfect.

17             THE COURT:  Okay.  Very well.

18             Okay.  On November 30, 2015, the defendant, Carlos

19    Javier Rivera-Velazquez, pled guilty to Count One of the

20    Indictment in Criminal Case Number 13-433, charging a violation

21    of Title 21, U.S. Code, Section 841(a)(1), 846, 860, which is a

22    Class B felony.

23             Now, the November 1, 2015, edition of the United

24    States Sentencing Guidelines has been used to apply the

25    advisory guideline adjustments, pursuant to the provisions of

1    Guideline Section 1B1.11(a).

2         The guideline for 21, U.S. Code, Section 841(a)(1)

3    offenses is found in U.S. Sentencing Guideline Section 2D1.1 of

4    the guidelines.  Now, that section provides that an offense

5    involving at least 3.5, but less than five, kilograms of

6    cocaine has a base offense level of 28, as per U.S. Sentencing

7    Guideline Section 2D1.1(c)(6).

8         Since the present offense took place within 1,000

9    feet of a protected location, a one-level enhancement is

10   warranted, pursuant to U.S. Sentencing Guideline Section

11   2D1.2(a)(2).  Since defendant possessed a firearm during the

12   conspiracy, there is a two-level increase -- this level is

13   increased two levels, pursuant to 2D1.1(b)(1), making it clear

14   that this is not a conviction for firearms.

15        Since the defendant has demonstrated acceptance of

16   responsibility for his participation in the offense, the

17   offense level is reduced by three levels, pursuant to Guideline

18   Section 3E1.1(a) and (b).  There are no other applicable

19   guideline adjustments.

20        Now, based on a total offense level of 28 and a

21   criminal history category of I, guideline imprisonment range is

22   from 78 to 97 months, with a fine range of 12,500 to $10

23   million, a supervised release of at least eight years.

24        The Court has reviewed the Advisory Guideline

25   Calculations, finds that the presentence investigation report

1    has adequately applied those computations.  The computations

2    satisfactorily reflect the components of the offense by

3    considering its nature and circumstances.  Furthermore, the

4    Court has considered the other sentencing factors set forth in

5    Title 18, U.S. Code, 3553(a).

6              Mr. Rivera-Velazquez is 34 years old.  He's a U.S.

7    citizen, resident of Caguas.  He has five dependents.

8              MR. INSERNI-MILAM:  I'm sorry, Your Honor.  He's 35,

9    yesterday.

10             THE COURT:  Oh, yeah, March 28th.  That's true.

11   Okay.  Okay.  Very well.  He's 35 years old.

12             Defendant has completed GED exams and was unemployed

13   at the moment of the arrest.  He suffers from hypertension and

14   hyperlipidemia.

15             MR. INSERNI-MILAM:  I'm sorry to interrupt.  That is

16   not correct.

17             He suffers from high blood pressure, which is, as a

18   matter of fact, the first docket entry in this case by judge,

19   by the Magistrate McGiverin, was a notice to MDC that he

20   suffered from high blood pressure.  He doesn't suffer from --

21             THE COURT:  The other one.  Well, okay.  So he

22   suffers from high blood pressure, and recently, you know, he

23   has been diagnosed with a herniated disc.

24             MR. INSERNI-MILAM:  Exactly.

25             THE COURT:  Okay?

```
1              There is no known history of emotional/psychological
2      problems within his background.  He has no self-reported
3      history of substance abuse.  However, he has reported excessive
4      alcohol consumption, for which the Court would like for the
5      Bureau of Prisons to give him some help.
6              This is Mr. Rivera-Velazquez's second known arrest
7      and first conviction.  He holds a prior arrest at the state
8      level for violation of the Puerto Rico Controlled Substances
9      Law and Puerto Rico Weapons Law, which has been
10     administratively closed as of this time.
11             The Court has taken into consideration the elements
12     of the offense and Mr. Rivera-Velazquez's participation as a
13     supplier, for the drug-trafficking organization, of
14     marijuana.
15             THE PROBATION OFFICER:  For the record, U.S.
16     Probation Officer Alexandra Nazario.
17             Actually, lipidemia is high cholesterol, and he
18     indicated that during the formal interview.
19             THE COURT:  So we stand corrected.
20             MR. INSERNI-MILAM:  Sorry, Your Honor.  Thank you.
21     We learned a new term today.  I apologize, Your Honor.
22             THE COURT:  So, Counsel, please, you're not within
23     the body of defendant.  Okay?
24             MR. INSERNI-MILAM:  The term.
25             THE COURT:  So, okay.  It's high cholesterol levels,
```

1    okay, which have to be treated by the Bureau of Prisons.

2    Okay?  Very well.

3            And then, the Court has taken into consideration the

4    elements of the offense, Mr. Rivera's participation, as I have

5    indicated, as a supplier of marijuana for the drug-trafficking

6    organization.  The Court has also taken into consideration the

7    Title 18, 3553, factors, again, elements of the offense, the

8    plea agreement that the parties have reached, the need to

9    promote respect for the law and protect the public from further

10   crimes by defendant, as well as the issues of deterrence and

11   punishment.

12           He has also taken into consideration what counsel has

13   brought to the attention of the Court by way of sentencing

14   memorandum, together with the supplement, concerning

15   defendant's personal history and characteristics.  Okay?

16           And so the Court will give the defendant a sentence

17   at this time, this being a Type-B plea, at the low end of the

18   guideline range.  Okay?

19           So it is the judgment of this Court that the

20   defendant will be committed to the custody of the Bureau of

21   Prisons to be in prison for a term of 78 months.  Okay?  That

22   is the low end of the guideline.

23           I have taken into consideration what you have

24   indicated concerning defendant's personal history and

25   characteristics.  So I have exercised my discretion in that

1    regard.  Okay?

2              Also, defendant will be designated, if at all

3    possible, to a suitable institution.  His first choice would be

4    Pensacola, in the State of Florida.  And then, if that is not

5    possible, Louisiana and, finally, Mississippi.  I believe he

6    has relatives -- where?

7              THE DEFENDANT:  In New York.

8              THE COURT:  -- in New York.  Well, at least, you

9    know, from here to Puerto Rico -- to Miami, they could go and

10   visit him.  Okay?

11             MR. INSERNI-MILAM:  Perfect.

12             THE COURT:  It's very important, you know, for full

13   and complete rehabilitation.

14             Also, the Court would like for this defendant to be

15   given, you know, a medical evaluation and be treated, you know,

16   at least, you know, for the pain that comes with the herniated

17   disc, okay, as well as any medication that will be necessary

18   for his hypertension and cholesterol levels, and, also, that he

19   be given, you know, any help that may be necessary, you know,

20   concerning his alcohol addiction.  Plus, you know, any

21   educational and vocational training that would be available,

22   you know, within the institution so he will be equipped to make

23   an honest living when he comes out on supervised release.

24             Upon release from confinement, defendant shall be

25   placed on supervised release for a term of eight years, under

1    the following terms and conditions:

2            He shall not commit another federal, state or local

3    crime and shall observe the standard conditions of supervised

4    release recommended by the U.S. Sentencing Commission and

5    adopted by this Court.

6            He shall not unlawfully possess a controlled

7    substance and refrain from possessing firearms, destructive

8    devices and other dangerous weapons.

9            He shall refrain from the unlawful use of controlled

10   substances, submit to a drug test within 15 days of release.

11   Thereafter, submit to random drug-testing, not less than three

12   samples during the supervision period, and not to exceed 104

13   samples per year, in accordance with the Drug Aftercare Program

14   Policy of the U.S. Probation Office, approved by this Court.

15           If any such samples detect substance abuse, defendant

16   shall participate in an inpatient or outpatient substance abuse

17   treatment program for evaluation and/or treatment, as arranged

18   by the U.S. Probation Officer, until duly discharged.

19   Defendant is required to contribute to the cost of services

20   rendered (co-payment) in an amount arranged by the probation

21   officer, based on the availability to pay or availability of

22   third-party payment.

23           He shall participate in a program or course of study

24   aimed at improving educational level and/or complete a

25   vocational training program.  In the alternative, he shall

1    participate in a job placement program recommended by the

2    probation officer.

3         Defendant shall provide the probation officer access

4    to any financial information upon request.  He shall submit to

5    a search of his person, property, house, residence, vehicle,

6    papers, computers, other electronic communication or data

7    storage devices or media, and effects (as defined in 18, U.S.

8    Code, Section 1030(e)(1), to search at anytime, with or without

9    a warrant, by the probation officer, and if necessary, with the

10   assistance of any other law enforcement officer (in the lawful

11   discharge of the supervision functions of the probation

12   officer) with reasonable suspicion concerning unlawful conduct

13   or a violation of a condition of probation or supervised

14   release.

15        The probation officer shall seize any electronic

16   device, which will be subject to further forensic

17   investigation/analyses.  Failure to submit to such a search and

18   seizure may be grounds for revocation.  Defendant shall warn

19   any other residents or occupants that their premises may be

20   subject to search, pursuant to this condition.

21        Defendant shall assist in the collection of a DNA

22   sample, as directed by the probation officer, pursuant to the

23   Revised DNA Collections Requirements, and Title 18, U.S. Code.

24        Having considered Mr. Rivera-Velazquez's financial

25   condition, a fine will not be imposed at this time.  And so,

1    but the special monetary assessment in the amount of $100 must

2    be imposed, as required by law.

3         Now, in your plea agreement, you have waived your

4    right to appeal, provided I sentence you in accordance with the

5    plea agreement, which I have done so.  Therefore, if you should

6    file a notice of appeal, most likely, the Court of Appeals will

7    enforce that waiver.

8         However, if you still wish to file a notice of

9    appeal, it has to be filed within 14 days of judgment being

10   entered in your case.  And if you're unable to pay the cost of

11   an appeal, you may apply for leave to appeal in forma pauperis.

12   And if you so request, the Clerk of the Court will prepare and

13   file a notice of appeal on your behalf.

14        Mr. Rivera, you know, I have taken into account some

15   of your good deeds, you know, that were relayed to me by

16   counsel, concerning your personal history and characteristics.

17   I think this should be it for you.  You know, it simply doesn't

18   pay, you know, to be here being sentenced, you know, spending

19   time in prison, when you can be enjoying your family, you know,

20   and those people.

21        So put your heart and soul, you know, in whatever

22   programs may be available for you, you know, and zero in on

23   your family in the future.  You know, forget about anything

24   that has to do with a controlled substance in the future, you

25   know.

```
 1              They're objects.  They're not as important as you, as
 2      a human being.  Okay?  You have a dignity of your own, you
 3      know, and you're much more than that.  And you can give much
 4      more than that, especially to your family members, as well as
 5      to society in general.  So I hope everything works out for
 6      while you're in prison.  Okay?
 7              Anything else?
 8              MR. INSERNI-MILAM:  Nothing else.  Thank you for
 9      those words, Your Honor.
10              THE COURT:  Very well.
11              MR. INSERNI-MILAM:  Permission to leave the
12      courtroom.
13              THE COURT:  Okay.
14              MR. INSERNI-MILAM:  Thank you.  Have a good
15      afternoon.
16              MR. LOPEZ-ROCAFORT:  Your Honor, we move for
17      dismissal of the remaining counts.
18              THE COURT:  So all remaining counts, according to the
19      request of the government, are hereby dismissed.
20              MR. LOPEZ-ROCAFORT:  Thank you, Your Honor.
21              THE COURT:  Okay.  Very well.
22          (Proceedings concluded at 5:24 p.m.)
23                              -oOo-
24
25
```

Cindy Lee Brown, Official Court Reporter
U.S. District Court, District of Puerto Rico
(787) 772-3478

```
 1   UNITED STATES DISTRICT COURT )
                                  )  ss.
 2   DISTRICT OF PUERTO RICO      )

 3

 4                     REPORTER'S CERTIFICATE

 5

 6        I, CINDY LEE BROWN, do hereby certify that the

 7   above and foregoing, consisting of the preceding 23 pages,

 8   constitutes a true and accurate transcription of my

 9   stenographic notes and is a full, true and complete transcript

10   of the proceedings to the best of my ability.

11        Dated this 1st day of May, 2016.

12

13

14                          /s/ Cindy Lee Brown
                            _____
15                          CINDY LEE BROWN, Federal
                            Official Court Reporter
16                          150 Carlos Chardon, Room 150
                            San Juan, PR  00918
17                          (787) 772-3478

18

19

20

21

22

23

24

25
```